UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

————————————————————————

SETH LOGAN,

                          Plaintiff,

                                                    9:18-CV-0291
v.                                                  (DNH/ML)

SUPERINTENDENT GRAHAM, Auburn
Correctional Facility; C.O. PFLUEGER,
Auburn Correctional Facility; OFFICER
SCOTT JONES, Auburn Correctional
Facility, formerly known as C.O. Smith;
and C.O. M. GOULD, Auburn Correctional
Facility,

                          Defendants.

————————————————————————

APPEARANCES:                                        OF COUNSEL:

SETH LOGAN
   Plaintiff, *Pro Se*
117 Avery Avenue
Buffalo, New York 14210

LETITIA A. JAMES                                    AIMEE COWAN, ESQ.
Attorney General for the State of New York          Assistant Attorney General
   Counsel for Defendants
300 South State Street, Suite 300
Syracuse, New York 13202


MIROSLAV LOVRIC, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

This matter has been referred to me for a Report and Recommendation by the Honorable David N. Hurd, United States District Judge.  Currently before the Court, in this civil rights action filed by Seth Logan ("Plaintiff") against Superintendent Graham, Auburn Correctional Facility, C.O. Pflueger,[1] Auburn Correctional Facility, Officer Scott Jones, Auburn Correctional Facility, formerly known as C.O. Smith, and C.O. M. Gould, Auburn Correctional Facility (collectively "Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 28).  For the reasons set forth below, I recommend that Defendants' motion be granted in part and denied in part.

---

[1]    The Court notes that Defendants sometimes refer to Defendant Pflueger as Defendant "Plfueger" or "Pfleuger."  (*See* Dkt. No. 28, Attach. 1; Dkt. No. 28, Attach. 3; Dkt. No. 28, Attach. 10.)  However, for the sake of consistency, the Court will refer to him as Defendant Pflueger, as reflected on the docket.  (*See generally* docket sheet.)

## TABLE OF CONTENTS

I.    RELEVANT BACKGROUND ................................................................................................. 1

   A.    Plaintiff's Claims .................................................................................................................... 1

   B.    Procedural History .................................................................................................................. 1

   C.    Statement of Undisputed Material Facts .......................................................................... 2

   D.    Parties' Briefing on Defendants' Motion for Summary Judgment ............................... 9

II.    RELEVANT LEGAL STANDARDS ................................................................................. 12

   A.    Standard Governing a Motion for Summary Judgment ............................................... 12

   B.    Standard Governing Exhaustion of Administrative Remedies ................................... 15

III.    ANALYSIS ........................................................................................................................... 18

   A.    Plaintiff's Failure to Oppose the Merits of Defendants' Summary Judgment Motion
     18

   B.    Exhaustion of Grievances AUB-67199-15 and AUB-67567-15 ................................. 20

   C.    Whether Plaintiff's First Amendment Retaliation Claims Should Nevertheless be
   Dismissed ..................................................................................................................................... 24

   D.    Doctrine of Qualified Immunity ....................................................................................... 38

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint asserts claims of retaliation against Defendants in violation of the First Amendment.  (Dkt. No. 1; Dkt. No. 6.)  The Court's Decision and Order dated May 4, 2018, thoroughly outlines Plaintiff's allegations and claims.  (Dkt. No. 6.)

### B.    Procedural History

On March 8, 2018, Plaintiff commenced this action by filing a verified Complaint against Defendants, Lieutenant Vasill, and Lieutenant Abate (Dkt. No. 1) together with a motion for leave to proceed *in forma pauperis* (Dkt. No. 2).  On May 4, 2018, the Court granted Plaintiff's motion to proceed *in forma pauperis*.  (Dkt. No. 6.)  In addition, the Court ordered that Plaintiff's retaliation claims against Defendants survive *sua sponte* review, but the Court dismissed Plaintiff's remaining claims including those against Lieutenant Vasill and Lieutenant Abate. (*Id.*)

On January 25, 2019, Defendants filed a letter motion requesting dismissal for failure to prosecute.  (Dkt. No. 27.)  On March 6, 2019, Defendants filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 and a motion to dismiss for lack of prosecution.  (Dkt. No. 28.) These motions were referred to United Stated Magistrate Judge David E. Peebles for a Report and Recommendation.  On March 27, 2019, Magistrate Judge Peebles issued a Report and Recommendation, which recommended that (1) the Complaint be dismissed based on Plaintiff's failure to prosecute and to comply with the Court's orders and local rules of practice, and (2) that Defendants' motion for summary judgment be denied as moot.  (Dkt. No. 30.)  On April 15, 2019, Plaintiff filed a change of address with the Court.  (Dkt. No. 32.)  As a result, on April 15,

2019, United States District Judge David N. Hurd *sua sponte* granted an extension of time to file objections to United Stated Magistrate Judge David E. Peebles's Report-Recommendation of March 27, 2019.  (Dkt. No. 33.)  Plaintiff did not file any objections to the Report-Recommendation dated March 27, 2019.  (*See generally* Docket Sheet.)

On July 3, 2019, the Court denied Defendants' motion to dismiss and referred to me for consideration of Defendants' motion for summary judgment.  (Dkt. No. 35.)  On July 3, 2019, Plaintiff was provided another opportunity to oppose Defendants' motion with a response due by August 20, 2019, and a reply due by August 26, 2019.  (*See* text notice dated 7/3/19.)  On September 9, 2019, the Court issued a text order granting Plaintiff yet another opportunity to oppose Defendants' motion with a deadline of September 30, 2019.  (Dkt. No. 37.)

On October 1, 2019, Plaintiff filed a response in opposition to Defendants' motion.  (Dkt. No. 39.)

### C.    Statement of Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Rule 7.1 Statement and not denied by Plaintiff in a Rule 7.1 Response.  (*Compare* Dkt. No. 28, Attach. 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 39 [Pl.'s Response].)

1.    Plaintiff was convicted in 2009 of Attempted Assault in the First and Second Degree.

2.    All claims in this matter arose out of Plaintiff's confinement at Auburn Correctional Facility ("Auburn"), as a result of his felony convictions in 2009.

3.    Plaintiff was released from prison to the Division of Parole on January 7, 2019.[2]

---

[2]    The Court notes that the citation provided by Defendants for this fact does not support the fact asserted.  *See* New York State Dep't of Corr. And Comty. Servs., http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (last visited November 25,

4.     In his Complaint, Plaintiff claims that on May 9, 2015, Defendant Pflueger stopped Plaintiff in the Auburn recreation yard, accused Plaintiff of being a white supremacist and stated that he would be searching Plaintiff's cell for gang material.

5.     Plaintiff alleges that the next day, on May 10, 2015, Defendant Pflueger threatened him while Plaintiff was exiting his cell, stating that Plaintiff "ain't gonna be around here for long. They're gonna get you. We're not sure how yet or for what, but it's gonna happen."

6.     According to Plaintiff, Defendant Pflueger did not make any specific threats about anything that he specifically was going to do to Plaintiff.

7.     Plaintiff filed a grievance on May 10, 2015, complaining about the alleged incident of May 9, 2015.

8.     Defendant Pflueger responded to the grievance by memo and stated that he stopped Plaintiff in the yard on May 9, 2015 after observing tattoos that could be interpreted as gang affiliation tattoos.

9.     Defendant Pflueger stated that he passed the information on to the Early Warning Box—which is an avenue to convey information to Auburn Correctional Facility's intelligence unit—and denied threatening or harassing Plaintiff in any way.

---

2019).  However, the Court deems the fact admitted because Plaintiff failed to deny it.  *Estate of D.B. by Briggs v. Thousand Islands Cent. Sch. Dist.*, 327 F. Supp. 3d 477, 485 n.2 & n.13 (N.D.N.Y. 2018) (Suddaby, C.J.) ("where a non-movant neither admits nor disputes a fact, the response is deemed an admission"); *Costello v. N.Y. State Nurses Ass'n,* 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding the plaintiff's responses to the defendant's statement of material facts not in dispute where the plaintiff's response paragraphs did not specifically dispute the defendant's statements or consisted of "conclusory allegations, speculation, or conjecture."); *In re Horowitz*, 14-CV-36884, 2016 WL 1039581, at *1 n.2 (Bankr. S.D.N.Y. Mar. 15, 2016) (stating that, "a response contending to neither admit or deny an allegation does not create a genuine issue of fact"); *accord, Piacente v. Int'l Union of Bricklayers & Allied Craftworkers*, 11-CV-1458, 2015 WL 5730095, at *2 n.3 (S.D.N.Y. Sept. 30, 2015).

10.    Plaintiff alleges that over a month later, on June 17, 2015, Defendant Pflueger fired Plaintiff from his job as a feed up porter.

11.    Plaintiff was employed as a feed up porter at Auburn for approximately one month until he was terminated on June 17, 2015.

12.    A feed up porter's duties include retrieving food trays from the mess hall and feeding inmates who are confined to their cell for disciplinary reasons.

13.    On the morning of June 17, 2015, Defendant Pflueger witnessed Plaintiff pass an unidentified item into the cell of another inmate.

14.    Defendant Pflueger ordered Plaintiff to return to his cell.

15.    Plaintiff yelled profanities as he went back to his cell.

16.    While in his cell, Plaintiff yelled "that faggot motherfucker fired me."

17.    Plaintiff shouted these profanities loud enough to communicate with another inmate on a different floor.

18.    Plaintiff alleges that Defendant Pflueger fired him as a feed up porter in retaliation for the grievance that Plaintiff filed dated May 10, 2015.

19.    Plaintiff's only basis for this belief is that there was "no other reason" for Defendant Pflueger to fire him.

20.    Based on Plaintiff's behavior on the morning of June 17, 2015, Defendant Pflueger authored a misbehavior report dated June 17, 2015, that charged Plaintiff with several DOCCS Directive violations including disobeying a direct order, creating a disturbance, harassment, and making threats.

21.    Defendant Correction Officer Scott Jones endorsed the misbehavior report as a witness to a portion of these events.

22.     At the time Defendant Jones endorsed the misbehavior report dated June 17, 2015, he had no knowledge that Plaintiff had filed a grievance against Defendant Pflueger on May 10, 2015.

23.     Plaintiff testified that he had never interacted with Defendant Jones before this incident on June 17, 2015.

24.     Plaintiff testified that he had no basis to believe that at the time Defendant Jones endorsed the misbehavior report, Defendant Jones knew that Plaintiff had filed any grievances against Defendant Pflueger.

25.     Plaintiff filed a grievance regarding the incident on June 17, 2015, but that grievance was denied.

26.     Defendant Pflueger was never counseled or disciplined as a result of the incident on June 17, 2015.

27.     As a result of the misbehavior report dated June 17, 2015, Plaintiff was found guilty of all charges at a disciplinary hearing and sentenced to 30 days of keep-lock confinement.

28.     Plaintiff filed another grievance dated July 21, 2015, which alleged that on July 8, 2015, he received a false report authored by Defendant Correction Officer Mark Gould in which, Defendant Gould recommended Plaintiff be placed in administrative segregation.

29.     Defendant Gould recommended that Plaintiff be placed in administrative segregation based on information he received from confidential informants, that Plaintiff planned to assault Defendant Pflueger when he was released from keep-lock confinement.

30.     Plaintiff was given a hearing with respect to whether he should be in administrative segregation.

31.    Plaintiff agreed with the recommendation to be placed in administrative segregation.

32.    Plaintiff did not know Defendant Gould prior to his recommendation that Plaintiff be placed in administrative segregation.

33.    Plaintiff testified that he believed Defendant Gould made the recommendation to place Plaintiff in administrative segregation on behalf of Defendant Pflueger in retaliation for Plaintiff's grievances, because "there [was] no other reason [for Defendant Gould] to do it."

34.    Plaintiff admitted he has no direct evidence that Defendant Gould recommended administrative segregation based on the grievances filed by Plaintiff against Defendant Pflueger.

35.    Plaintiff has no evidence that Defendant Gould even knew about any grievances filed by Plaintiff against Defendant Pflueger.

36.    Plaintiff is not aware of any conversations that Defendant Gould had with Defendant Pflueger in which they discussed that Defendant Gould should file an administrative segregation recommendation based on false information.

37.    Plaintiff also alleged that after he was removed from his cell in the Special Housing Unit on July 9, 2015, items went missing after another inmate witnessed Defendant Pflueger enter Plaintiff's cell.

38.    Defendant Pflueger did not pack Plaintiff's cell and he did not remove any of Plaintiff's property.

39.    The only basis for Plaintiff's contention that Defendant Pflueger destroyed his property is that Michael Betters, another inmate, reported seeing Defendant Pflueger enter Plaintiff's cell.

40.     According to Plaintiff, Michael Betters could not actually see Defendant Pflueger in Plaintiff's cell.

41.     Further, Plaintiff does not know who transported his property to his new cell in the Special Housing Unit.

42.     Plaintiff filed another grievance alleging that on August 4, 2015, and August 6, 2015, Defendant Pflueger threatened Plaintiff while he was training another officer.

43.     Defendant Pflueger responded to the grievance and affirmed that on August 4, 2015, and August 6, 2015, he showed various new officers the Special Housing Unit area, but they did not stop at Plaintiff's cell and he certainly never made any threatening or harassing statements to Plaintiff.

44.     Plaintiff testified that at no point during his incarceration did Defendant Pflueger use any force against him.

45.     Plaintiff is not alleging any physical injuries with respect to any of his claims.

46.     The only basis on which Plaintiff brings retaliation claims against Defendant Graham is because he denied Plaintiff's grievances and allowed Defendant Pflueger's behavior to continue.

47.     Other than the grievances he filed, Plaintiff never sent Defendant Graham any other correspondence about these incidents and he never spoke with Defendant Graham in person about them.

<u>Exhaustion of Administrative Remedies</u>

48.     Plaintiff was familiar with the grievance process at Auburn Correctional Facility during the relevant time period.

49.     Plaintiff was aware of how to properly file a grievance and where to appeal if he disagreed with the decision.

50.     More specifically, Plaintiff was aware that a grievance must be submitted to the Inmate Grievance Review Committee ("IGRC") and a decision by the IGRC could be appealed to the Superintendent.

51.     Further, Plaintiff was aware that a decision by the Superintendent could be appealed to the Central Office Review Committee ("CORC").

52.     Plaintiff testified that if an inmate does not receive a response to his appeal to CORC, he must write to CORC and inquire as to the status of his appeal.

53.     Plaintiff filed Grievance AUB-67199-15, in which he complained that he was "labeled a gang member" by Defendant Pflueger.

54.     After an investigation, the Superintendent denied Plaintiff's grievance and Defendant Pflueger was never counseled or disciplined.

55.     Plaintiff also filed Grievance AUB-67567-15, in which he complained that on July 8, 2015, he received a false report authored by Defendant Gould in which Defendant Gould recommended Plaintiff be placed in administrative segregation.

56.     Grievance AUB 67567-15 also alleged that after Plaintiff was removed from his cell in the Special Housing Unit on July 9, 2015, items went missing after another inmate witnessed Defendant Pflueger packing Plaintiff's cell.

57.     Defendant Graham denied Plaintiff's Grievance AUB-67567-15.

D.      **Parties' Briefing on Defendants' Motion for Summary Judgment**

1.      **Defendants' Memorandum of Law**

Generally, in support of their motion for summary judgment, Defendants assert three

arguments.  (*See generally* Dkt. No. 28, Attach. 3 [Defs.' Mem. of Law].)

First, Defendants argue that Plaintiff failed to exhaust his administrative remedies with

respect to grievances AUB-67199-15 and AUB-675667-15.  (*Id.*)  More specifically, Defendants

argue that the Prison Litigation Reform Act requires prisoners who bring a lawsuit in federal

court to first exhaust their available administrative remedies; this requirement is mandatory such

that, failure to comply subjects the complaint to dismissal.[3]  (*Id.*)  Further, Defendants argue that

the New York State Department of Corrections and Community Services ("DOCCS") has the

following three-tiered administrative review and appeals process for prisoner grievances: (1)

review by the IGRC, (2) appellate review of the IGRC decision by the prison superintendent, and

(3) appellate review of the prison superintendent by CORC.  (*Id.*)  Defendants argue that Plaintiff

failed to appeal the prison superintendent's decision with respect to grievances AUB-67199-15

and AUB-675667-15, to CORC and thus, the claims contained in those grievances should be

dismissed for Plaintiff's failure to exhaust his administrative remedies.  (*Id.*)

Second, Defendants argue that Plaintiff's first amendment retaliation claims should be

dismissed because (a) with respect to Defendant Pflueger, (i) he lacks authority to "fire" an

inmate from his job, (ii) the record lacks any evidence of a causal connection between Plaintiff's

grievance of May 10, 2015, and the misbehavior report of June 17, 2015, except temporal

proximity, which is insufficient to survive a motion for summary judgment, (iii) the misbehavior

---

[3]      Defendants acknowledge that there are "certain caveats" to the PLRA's exhaustion
requirement, however Defendants argue that those caveats are inapplicable here.

report of June 17, 2015, was truthful and Plaintiff admitted that he was appropriately charged with creating a disturbance and harassment, (iv) Defendants presented non-retaliatory reasons for Defendant Pflueger "firing" Plaintiff from his porter duties and authoring the misbehavior report of June 17, 2015, (v) the alleged verbal harassment and threats are not considered adverse actions for purposes of retaliation, (vi) even if the alleged verbal harassment and threats did constitute an adverse action, Plaintiff failed to demonstrate any evidence of a causal connection, (vii) there is no evidence of a causal connection between Defendant Gould's recommendation that Plaintiff be placed in administrative segregation and Plaintiff's grievances filed against Defendant Pflueger, (viii) there is no evidence that Defendant Pflueger removed or destroyed Plaintiff's property, and (ix) there is no evidence of a causal nexus between the grievances he filed and Defendant Pflueger allegedly destroying his property; (b) with respect to Defendant Jones, (i) there is no evidence that he had any knowledge that Plaintiff filed a grievance against Defendant Pflueger, and (ii) the record is devoid of any evidence establishing why he would file a false misbehavior report against Plaintiff on behalf of Defendant Pflueger; (c) with respect to Defendant Gould, (i) Plaintiff agreed with the recommendation that he remain in administrative segregation, (ii) there is no evidence in the record to support a causal connection between Plaintiff's grievance against Defendant Pflueger on May 10, 2015, and Defendant Gould's administrative segregation recommendation on July 21, 2015, and (iii) there is no evidence that Defendant Gould was aware of Plaintiff's grievance against Defendant Pflueger; and (d) with respect to Defendant Graham, (i) in the event that the claims against Defendants Pflueger, Jones, and Gould are dismissed, the claims against Defendant Graham must also be dismissed because there is no supervisor liability where there is no established underlying constitutional violation, and (ii) even if the claims against Defendants Pflueger, Jones, and Gould are not dismissed, the

claims against Defendant Graham still should be dismissed because he was not personally involved in the alleged constitutional violations.  (*Id.*)

Third, Defendants argue that, in the alternative, they are entitled to dismissal pursuant to the doctrine of qualified immunity.  (*Id.*)

### 2.    Defendants' First Supplemental Letter Brief

Generally in their first supplemental letter brief, Defendants re-assert the arguments set forth in their memorandum of law and assert that (1) Plaintiff has repeatedly failed to oppose Defendants' motion despite being provided with notice of the consequences of failing to respond to the motion two times, and (2) as a result of Plaintiff's failure to respond, the Court should deem (a) Defendants' factual assertions as true, and (b) Plaintiff to have consented to the legal arguments contained in Defendants' memorandum of law.  (Dkt. No. 36.)

### 3.    Defendants' Second Supplemental Letter Brief

Generally in their second supplemental letter brief, Defendants re-assert the arguments set forth in their memorandum of law and assert that (1) Plaintiff sent Defendants a "Response to Dispositive Motions," which incorrectly indicated that Defendants' motion is based solely on Plaintiff's timeliness and otherwise failed to address Defendants' arguments as to the merits of his claims, (2) Plaintiff has now failed to oppose Defendants' motion three times after receiving notice that his response was required, and (3) despite Plaintiff's request in his response for additional time to respond, the Court should not grant this request because their motion has been pending for nearly one year and Plaintiff "has been given great latitude with respect to the Court's deadlines in this matter."  (Dkt. No. 38.)

### 4.    Plaintiff's "Response to Dispositive Motions"

Generally, in opposition to Defendants' motion for summary judgment, Plaintiff acknowledged his failure to meet deadlines and asked that the Court consider "many mitigating

factors that have contributed to this short coming" including his release from prison, the

requirements of his parole, and his criminal history. (Dkt. No. 39.)  In addition, Plaintiff asserts

that "all these Motions to Dismiss this complaint have been based on timeliness." (*Id.*)  Plaintiff

did not file a response to Defendants' Statement of Material Facts, an affidavit setting forth any

factual assertions, an opposition memorandum of law, or any document that responded to

Defendants' legal arguments. (*See generally* Dkt. No. 39.)  In addition, Plaintiff did not request

any additional time to provide a more thorough response to Defendants' motion. (*Id.*)

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as

a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence

is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4]  As for the materiality requirement, a dispute of fact is

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

---

[4]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to
create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation
omitted).  As the Supreme Court has explained, "[The non-movant] must do more than simply
show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.
Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ.

P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute–even if that non-

movant is proceeding *pro se*.[5]  (This is because the Court extends special solicitude to the *pro se*

litigant largely by ensuring that he or she has received notice of the consequences of failing to

properly respond to the motion for summary judgment.)[6]  As has often been recognized by both

the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's

procedural rules.[7]

Of course, when a non-movant willfully fails to respond to a motion for summary

judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that

the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

Rather, as indicated above, the Court must assure itself that, based on the undisputed material

facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v.*

*Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin,

---

[5]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.)
(citing cases).

[6]    *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[7]    *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[8]–even when the non-movant was proceeding *pro se*.[9]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[10]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested

---

[8]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[9]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

[10]    *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.    Standard Governing Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e.  The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  In this regard, exhaustion serves two major purposes.  First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures."  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Woodford*, 548 U.S. at 89.  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532.

In accordance with the PLRA, DOCCS has made available a well-established inmate grievance program.  7 N.Y.C.R.R. § 701.7.  Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances.  7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7.[11]  First, an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.[12]  If a grievance complaint form is not readily available, a complaint may be submitted on plain paper.  A representative of the facility's IGRC has a certain number of days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing.  Second, a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision.  The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal.  Third, a grievant may appeal to CORC within a certain number of days of receipt of the superintendent's written decision.  CORC is to render a written decision within a certain number of days of receipt of the appeal.

In addition, "[t]he regulations [ ] provide that if the plaintiff does not get a 'receipt' from the CORC within 45 days of the date he filed his appeal, he should contact the IGP to make sure that his appeal was 'received.'"  *Bell v. Napoli*, 17-CV-0850, 2018 WL 6506072, at *5 (N.D.N.Y. Dec. 11, 2018) (Baxter, M.J.) (citing 7 N.Y.C.R.R. § 701.5(d)(3)(i)).

---

[11]    *See also Murray v. Palmer*, 03-CV-1010, 2010 WL 1235591, at *1 & n.1 (N.D.N.Y. Mar. 31, 2010) (citation omitted) (Suddaby, J.).

[12]    The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

It is important to note that these procedural requirements contain several safeguards.  For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances.  If that application was denied, the inmate could file a complaint complaining that the application was wrongfully denied.[13]  Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can–and must–be appealed to the next level, including CORC, to complete the grievance process.[14]

Generally, if a prisoner has failed to properly follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies, and his claims are subject to dismissal.  *Woodford*, 548 U.S. at 93; *Porter*, 534 U.S. at 524; *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).  However, a plaintiff's failure to exhaust does not end the inquiry.  The Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.  *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004), *accord*, *Ruggiero*, 467 F.3d at 175.  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."  *Hemphill*, 380 F.3d at 686 (citation omitted).  Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the

---

[13]    *See Murray*, 2010 WL 1235591, at *2 & n.3  (citing *Groves v. Knight*, 05-CV-0183, Decision and Order at 3 (N.D.N.Y. filed Aug. 4, 2009), an appeal from which was subsequently dismissed as frivolous, *see Groves v. Knight*, No. 09-3641, Mandate (2d Cir. Filed Jan. 15, 2010).

[14]    7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *see also Murray*, 2010 WL 1235591, at *2 & n.4 (collecting cases).

defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].[15]

## III.    ANALYSIS

### A.    Plaintiff's Failure to Oppose the Merits of Defendants' Summary Judgment Motion

Before turning to the merits of Defendants' motion, a threshold issue to be addressed is the legal significance of Plaintiff's failure to oppose the merits of Defendants' motion.

Pursuant to Local Rule 7.1(b)(3), by failing to oppose Defendants' motion, Plaintiff has effectively consented to the granting of the relief sought. That rule provides as follows:

> Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y. L.R. 7.1(b)(3); *see also Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) (holding that the district courts may enter summary judgment in favor of the moving party where the non-moving party fails to respond in opposition, but not without first "ensur[ing] that each

---

[15]    The Court notes that the Supreme Court recently eliminated this third inquiry, and courts are no longer permitted to excuse a prisoner's failure to exhaust his administrative remedies because of "special circumstances." *Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016).

statement of material fact is support by record evidence sufficient to satisfy the movant's burden

of production" and "determin[ing] whether the legal theory of the motion is sound").

In this case, Plaintiff has not responded to the merits of Defendants' motion.  The motion

was properly filed by Defendants, and Defendants through their motion have met their burden of

demonstrating entitlement to some of the relief requested.  With respect to the question of

whether Defendants have met their burden, I note that the "burden of persuasion is lightened

such that, in order to succeed, [their] motion need only be 'facially meritorious.'"  *See Rodriguez*

*v. Goord*, 04-CV-0358, 2007 WL 4246443, at *1 (N.D.N.Y. Nov. 27, 2007) (Scullin, J., adopting

Report-Recommendation on clear error review) (finding that determination of whether a movant

has satisfied its burden to demonstrate entitlement to a dismissal under Local Rule 7.1(b)(3) "is a

more limited endeavor than a review of a contested motion to dismiss" (citing cases)).

Because Defendants have accurately cited both proper legal authority and evidence in the

record supporting the grounds on which their motion is based with respect to Defendants Jones

and Gould as set forth below, and Plaintiff has failed to respond in opposition to the merits of the

motion for summary judgment, I find that Defendants' motion is facially meritorious.  *Jackson*,

766 F.3d at 194.  Accordingly, I recommend that the Court grant Defendants' motion with

respect to Defendants Jones and Gould on this basis.

It should also be noted that there are additional consequences flowing from Plaintiff's

failure to file an opposition to Defendants' Local Rule 7.1(a)(3) Statement of Material Facts.

Local Rule 7.1 provides, in relevant part, that "[t]he Court shall deem admitted any properly

supported facts set forth in the Statement of Material Facts that the opposing party does not

specifically controvert." N.D.N.Y. L.R. 7.1(a)(3) (emphasis in original). Courts in this district

have routinely enforced this rule in cases where a non-movant has failed to properly respond.

*See*, *e.g.*, *Elgamil v. Syracuse Univ.*, 99-CV-0611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2010) (McCurn, J.) (listing cases). Undeniably, *pro se* litigants are entitled to some measure of forbearance when defending against summary judgment motions. *Jemzura v. Public Serv. Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, J.). The deference owed to *pro se* litigants, however, does not extend to relieving them of the ramifications associated with the failure to comply with the court's local rules. *Robinson v. Delgado*, 96-CV-0169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J., adopting Report-Recommendation on clear error review.). Stated differently, "a pro se litigant is not relieved of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Latouche v. Tompkins*, 09-CV-0308, 2011 WL 1103045, at *1 (N.D.N.Y. Mar. 23, 2011) (Mordue, J.).

Here, because Plaintiff was warned of the consequences of failing to properly respond to Defendants' Local Rule 7.1 Statements (Dkt. No. 28 at 2; text notice dated July 3, 2019), and he has failed to do so, I recommend that the Court deem the facts contained in Defendants' Local Rule 7.1(a)(3) Statements as having been admitted to the extent they are supported by accurate record citations. *See*, *e.g.*, *Latouche*, 2011 WL 1103045, at *1; *see also Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996). As to any facts not contained in Defendants' Local Rule 7.1(a)(3) Statements, in light of the procedural posture of this case, the Court is "required to resolve all ambiguities and draw all permissible factual inferences" in favor of Plaintiff. *Terry*, 336 F.3d at 137.

## B.    Exhaustion of Grievances AUB-67199-15 and AUB-67567-15

There is no dispute in this case that Plaintiff filed grievances AUB-67199-15 dated May 10, 2015, and AUB-67567-15 dated July 21, 2015, and that he appealed the denial of these

grievances to the facility superintendent.  The parties only dispute whether Plaintiff completed

the third step in the grievance process by appealing to CORC.

Defendants submitted proof in admissible form by way of an affidavit from Rachael

Seguin, the custodian of the records maintained by CORC.  (Dkt. No. 28, Attach. 16.)  In her

affidavit, Ms. Seguin stated that she searched record appeals received by CORC filed by

Plaintiff, and her search revealed "no appeal for Grievance AUB-67199-15" and "no appeal for

Grievance AUB-67567-15."  (*Id.* at ¶¶11-12.)

However, with respect to grievance AUB-67199-15, Plaintiff alleged in his verified

Complaint[16] that "[o]n [July 3, 2015, he] received [the denial from the Superintendent] and

requested that it be appealed to the Central Office Review Committee."  (Dkt. No. 1 at 5.)

Similarly, Plaintiff testified that after receiving the denial of his grievance from the

Superintendent, he appealed to CORC.  (Dkt. No. 28, Attach. 5 at 46.)  Moreover, Plaintiff

alleged in his verified Complaint that on August 15, 2015, he "composed a letter to the C.O.R.C.

Inmate Grievance Program Supervisor Karen Bellamy inquiring as to whether or not request for

appeal was received." (Dkt. No. 1 at 5.)  Likewise, Plaintiff testified that he wrote a letter to

CORC asking about the status of his appeal.  (Dkt. No. 28, Attach. 5 a 46.)  Furthermore,

Plaintiff alleged in his verified Complaint that on September 2, 2015, he "composed a letter to

Auburn C.F. I.G.P. Supervisor Cheryl Parmiter inquiring as to whether or not [his] appeal was

---

[16]    "Although 'a plaintiff's pro se status does not allow him to rely on conclusory allegations
or unsubstantiated speculation to overcome a motion for summary judgment,' *Almonte v. Florio*,
02-CV-6722, 2004 WL 60306, at *3 n.10 (S.D.N.Y. Jan. 13, 2004) (citation and italics omitted),
where a plaintiff 'verifie[s] his complaint by attesting under penalty of perjury that the
statements in the complaint [are] true and to the best of his knowledge,' the 'verified complaint
is to be treated as an affidavit for summary judgment purposes,' *Colon v. Coughlin*, 58 F.3d 865,
872 (2d Cir. 1995)."  *King v. Puershner*, 17-CV-1373, 2019 WL 4519692, at *1 n.1 (S.D.N.Y.
Sept. 19, 2019).

submitted as requested." (Dkt. No. 1 at 5.) Similarly, Plaintiff testified that "I believe that one I never received a response from Central Office. So I wrote Albany's – Auburn's I.G.R.C. and asked them what happened and they said they never received an appeal." (Dkt. No. 28, Attach. 5 at 46.)

In addition, with respect to grievance AUB-67567-15, Plaintiff alleged in his verified Complaint that "[o]n [August 15, 2015, he] received [the denial from the superintendent] and requested that it be appealed to the C.O.R.C." (Dkt. No. 1 at 6.) Moreover, Plaintiff's verified Complaint alleged that on September 29, 2015, he "composed another letter to C.O.R.C.'s I.G.P. Supervisor Karen Bellamy informing her of all grievances he was awaiting decisions on . . . as he hadn't yet received receipt of appeal for this grievance." (Dkt. No. 1 at 6.)

Generally, conclusory allegations that an inmate appealed the superintendent's grievance denial to CORC are insufficient to withstand a motion for summary judgment. *See Gibbs v. Gadway*, 19-CV-0281, 2019 WL 5191506, at *3 (N.D.N.Y. Oct. 15, 2019) (Stewart, M.J.) (recommending dismissal based on the plaintiff's failure to exhaust his administrative remedies where the plaintiff made "a purely conclusory allegation that he appealed the grievance denial to CORC.").

However, the case law implies that where a plaintiff sets forth the date that he or she appealed the grievance to CORC, that may be enough to survive a motion for summary judgment. *C.f. Gibbs v. Gadway*, 19-CV-0281, 2019 WL 5191506, at *3 (N.D.N.Y. Oct. 15, 2019) (Stewart, M.J.) (recommending dismissal of the plaintiff's claims for failure to exhaust his administrative remedies where the plaintiff "has not provided a copy of the grievance appeal or even asserted what date he filed the appeal."); *Gough v. Morris*, 16-CV-1107, 2018 WL 7199494, at *3 (N.D.N.Y. Dec. 14, 2018) (Stewart, M.J.) (recommending dismissal based on the

plaintiff's failure to exhaust his administrative remedies where he testified that he appealed the superintendent's response to CORC but there was no evidence in the record that (a) the grievance or the superintendent's response were appealed to CORC and, (b) despite not receiving a response from CORC, the plaintiff testified that he did not write to CORC to follow-up); *Campbell v. Prue*, 16-CV-0004, 2018 WL 4635708, at *5 (N.D.N.Y. July 3, 2018) (Hummel, M.J.) ("Although [the plaintiff] alleges that he filed [a] grievance . . ., plaintiff does not state when he filed such grievance . . . . Further, plaintiff has not provided a copy of the alleged grievance or the Marcy IGRC's denial of that grievance."); *Toliver v. Stefinik*, 12-CV-0077, 2016 WL 3349316, at *6 (N.D.N.Y. June 15, 2016) (D'Agostino, J.) ("vague and conclusory allegations . . . [regarding] grievances . . . do not, in light of the documentation Defendants have provided about Plaintiff's grievance history, create a factual dispute material to the issue of whether Plaintiff exhausted his administrative remedies."); *Smith v. Kelly*, 985 F. Supp. 2d 275, 289 (N.D.N.Y. 2013) (Suddaby, J.) (granting the defendants' motion for summary judgment on the issue of exhaustion where the plaintiff failed to "identify the name of the 'IGRC's supervisor' who purportedly told him that a new prisoner does not file a grievance at Auburn C.F. if it pertains to the prisoner's previous facility, nor does he specify the date, means or location of this purported communication.").

Mindful that a court should not resolve credibility issues when deciding a motion for summary judgment, and that Defendants bear the ultimate burden of proving that Plaintiff did not exhaust his administrative remedies, I conclude that there appears to be a material issue of

fact regarding whether Plaintiff appealed grievances AUB-67199-15 and AUB-67567-15.[17]  As a result, I recommend that Defendants' motion be denied on this basis.

### C.     Whether Plaintiff's First Amendment Retaliation Claims Should Nevertheless be Dismissed

A cognizable claim of retaliation pursuant to 42 U.S.C. § 1983 lies when prison officials take an adverse action against an inmate that is motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment.  *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws.").  As the Second Circuit has repeatedly cautioned, however, because such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus, courts must approach such claims "with skepticism and particular care."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *accord, Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

---

[17]     The Court notes that this conclusion is based on the special solicitude afforded to Plaintiff as a *pro se* litigant.  Further, the Court notes that the evidence in the record to support the exhaustion of Plaintiff's administrative remedies is sparse.  *See c.f. Richardson v. Eberth*, 14-CV-6138, 2016 WL 1271078, at *2-3 (W.D.N.Y. Mar. 29, 2016) (dismissing based on failure to exhaust administrative remedies where the plaintiff attached a copy of his original grievance which did not "bear any indicia that it was received or provided to any individual at the jail for transmission to the CORC" and his affidavit submitted in opposition failed to provide any specific details to support his allegation that he appealed his grievance to CORC (e.g. it did not state what specific person he gave it to in the prison, on what date he gave the appeal to anyone at the prison, or any other pertinent or specific information to support his allegations)); *Toliver v. Stefinik*, 12-CV-0077, 2016 WL 3349316, at *6 (June 15, 2016) (D'Agostino, J.) (dismissing for failure to exhaust administrative remedies where the plaintiff submitted a copy of a formal grievance dated March 9, 2011, that was not reflected in the defendants' records but where the plaintiff alleged that he "circulated" the grievance to the defendants and it was unclear whether the grievance was ever submitted to IGRC).

To state a *prima facie* claim pursuant to 42 U.S.C. § 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct at issue was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action–in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).

If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff even in the absence of the protected conduct. *Mount Healthy*, 429 U.S. at 287. If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

Analysis of retaliation claims thus requires careful consideration of the protected activity in which the inmate plaintiff has engaged, the adverse action taken against him or her, and the evidence tending to link the two. When such claims, which are exceedingly case specific, are alleged in only conclusory fashion, and are not supported by evidence establishing the requisite nexus between any protected activity and the adverse action complained of, a defendant is entitled to the entry of summary judgment dismissing plaintiff's retaliation claims. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

### 1.  Defendant Pflueger

Plaintiff alleges that Defendant Pflueger retaliated against him during four separate incidents: (1) firing Plaintiff as a feed up porter and filing a false misbehavior report on June 17, 2015, (2) verbal harassment on (a) an unspecified dated in June or July 2015, (b) August 4, 2015, and (c) August 6, 2015, (3) causing Defendant Gould to file a false administrative segregation recommendation, and (4) the destruction of Plaintiff's personal property.

### a.  Incident on June 17, 2015[18]

Defendants argue that Plaintiff's retaliation claim with respect to the incidents on June 17, 2015, fails based on the third element, that there is no evidence in the record to support the contention that Plaintiff was retaliated against for his protected speech.[19]

In considering whether there is a "causal connection between the protected speech and the adverse action, a court may consider a number of factors, including any statements made by

---

[18]    Defendants argue that Defendant Pflueger, as a correction officer, would not have had authority to fire Plaintiff as a feed up porter.  (Dkt. No. 28, Attach. 3 at 17-18; Dkt. No. 28, Attach. 10 at ¶11.)  However, there is evidence in the record that disputes this assertion and creates an issue of fact for trial.  (Dkt. No. 28, Attach. 5 at 49.)

[19]    It is undisputed that Plaintiff engaged in constitutionally protected speech by the filing of grievances.  (Dkt. No. 1 at 5-7; Dkt. No. 28, Attach. 11; Dkt. No. 28, Attach. 12; Dkt. No. 28, Attach. 14; Dkt. No. 28, Attach. 15; Dkt. No. 28, Attach. 18; Dkt. No. 28, Attach. 19.)  *See also Flood v. Cappelli*, 18-CV-3897, 2019 WL 3778736, at \*7 (S.D.N.Y. Aug. 2, 2019) (collecting cases) (holding that the filing of a grievance is protected speech).  In addition, the alleged actions taken by Defendants constitute adverse actions because they would deter a prisoner of "ordinary firmness" from exercising his rights.  *See Johnson v. Schiff*, 17-CV-8000, 2019 WL 4688542, at \*24 (S.D.N.Y. Sept. 26, 2019) (collecting cases) (holding that the filing of a false misbehavior report against a prisoner is an adverse action); *Hayes v. Dahkle,* 16-CV-1368, 2017 WL 9511178, at \*11 (N.D.N.Y. Oct. 30, 2017) (Hummel, M.J.) (holding that the "filing of a falsified misbehavior report that results in disciplinary segregated confinement constitutes adverse action."); *Casey v. Pallito*, 12-CV-0284, 2016 WL 96157, at \*7 (D. Vt. Jan. 7, 2016) (holding that terminating a prisoner's employment is an "adverse action."); *Chavis v. Struebel*, 317 F. Supp. 2d 232, 238 (W.D.N.Y. 2004) (noting that "assigning the inmate [to] less desirable work assignments satisfies the adverse action requirement" for purposes of a prisoner's First Amendment retaliation claim).

the defendant concerning his motivation and the temporal proximity between the protected

activity and the defendant's adverse action." *Roseboro v. Gillespie*, 719 F. Supp. 2d 353, 366

(S.D.N.Y. 2011); *see also Tuitt v. Chase*, 11-CV-0776, 2013 WL 877439, at *7 (N.D.N.Y. Jan.

30, 2013) (Dancks, M.J.), *report and recommendation adopted*, 2013 WL 877617 (N.D.N.Y.

Mar. 8, 2013) (factors relevant to a consideration of causal connection "include: (i) the temporal

proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior

good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the

defendant concerning his or her motivation").  The Second Circuit has "held that temporal

proximity between protected conduct and an adverse action constitutes circumstantial evidence

of retaliation," but has also "consistently required some further evidence of retaliatory animus

before permitting a prisoner to proceed to trial on a retaliation claim." *Washington v. Afify*, 681

F. App'x 43, 46 (2d Cir. 2017); *see also Thomas v. Waugh*, 13-CV-0321, 2015 WL 5750945, at

*4 (N.D.N.Y. Sept. 30, 2015) (D'Agostino, J. adopting Report-Recommendation on *de novo*

review) (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001))

("temporal proximity alone is insufficient to establish an inference of retaliation.").

    Here, in addition to temporal proximity connecting Plaintiff's grievance of May 10, 2015,

to the incident on June 17, 2015,[20] Defendant Pflueger's alleged statements provide

circumstantial evidence of causation.  Plaintiff's verified Complaint alleged that on August 4,

---

[20]    "In assessing temporal proximity, the Second Circuit has established that no more than six months between the protected activity and the adverse action establishes the temporal proximity sufficient to support an inference of causal connection." *Hayes v. Dahkle*, 16-CV-1368, 2017 WL 9511178, at *9 (N.D.N.Y. Oct. 30, 2017) (Hummel, M.J.) (citing *King v. McIntyre*, 11-CV-1457, 2015 WL 1781256, at *5 (N.D.N.Y. Apr. 8, 2016)).  Here Plaintiff was fired as a feed up porter and Defendant Pflueger filed an allegedly false misbehavior report on June 17, 2015, which is "well within the Second Circuit's six-month time frame for establishing a causal connection between [P]laintiff's filing of a grievance" on May 10, 2015.  *Hayes*, 2017 WL 9511178, at *10.

2015, Defendant Pflueger said to another correction officer, "[t]his is also where we keep idiots like this guy who think they can snitch on officers and nothing's going to happen to them," and "[h]ow'd that work out for you stupid?  You want to help me explain to him how our grievance procedure works?"  (Dkt. No. 1 at 24-25.)  Moreover, the verified Complaint alleged that on August 6, 2015, Defendant Pflueger said, "[o]h, and just so you know, I didn't forget about your latest grievance either.  You better say a prayer to your White Supremacist God that I'm not here on the day they bring you down to the draft room, because I'll be watching the change sheet. You're not gonna make it outta here in 1 piece."  (Dkt. No. 1 at 25.)  These statements provide circumstantial evidence that Defendant Pflueger's actions on June 17, 2015, firing Plaintiff from his job as a feed up porter and filing a misbehavior report against him that ultimately resulted in his placement in keep-lock confinement for thirty days, were in retaliation for Plaintiff's grievance of May 10, 2015.  *See Cole v. N.Y.S. Dep't of Corr. and Cmty. Supervision*, 14-CV-0539, 2016 WL 5394752, at *26 (N.D.N.Y. Aug. 25, 2016) (Peebles, M.J.) (finding an issue of fact as to retaliation where the defendant allegedly said (a) "Happy Anniversary" in reference to prior assaults and a lawsuit that resulted from those assaults, and (b) that the assault was "payback" for the plaintiff's grievances); *Roland v. McMonagle*, 12-CV-6331, 2015 WL 5918179, at *6 (S.D.N.Y. Oct. 9, 2015) (finding an issue of fact as to retaliation where there was evidence that the defendants were aware of the plaintiff's complaints and mocked him for filing grievances).[21]

---

[21]    While Defendant Pflueger denies making the statements on August 4, 2015, and August 6, 2015, (Dkt. No. 28, Attach. 10 at ¶¶ 25-25), "[t]he court, when faced with conflicting sworn statements, must leave such credibility determinations to a reasonable fact finder to determine." *Mack v. Wood*, 17-CV-1146, 2019 WL 5197230, at *7 (N.D.N.Y. July 26, 2019) (Baxter, M.J.).

As a result, the burden shifts to Defendants to show by a preponderance of the evidence that they would have taken action against the plaintiff even in the absence of the protected conduct. *Mount Healthy*, 429 U.S. at 287.

With respect to the "firing" of Plaintiff as a feed up porter, Defendants submitted a non-retaliatory reason—that Defendant Pflueger observed Plaintiff pass an unidentified object into the cell of another inmate. (Dkt. No. 28, Attach. 10 at ¶13.) However, Plaintiff testified that he did not pass any unidentified items into another inmate's cell. (Dkt. No. 28, Attach. 5 at 51-52.) As a result, I find that a material issue of fact remains for trial.

However, with respect to the allegedly false misbehavior report, Plaintiff admitted some of the allegations contained in the misbehavior report. More specifically, Plaintiff admitted that he yelled profanities as he walked back to his cell and that while in his cell, he made derogatory statements about Defendant Pflueger loud enough to be heard by an inmate on a different floor. (Dkt. No. 28, Attach. 5 at 54-55.) This admission "suggests that 'plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.'" *Flynn v. Ward*, 15-CV-1028, 2018 WL 3195095, at *12 (N.D.N.Y. June 7, 2018) (Hummel, M.J.) (quoting *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002)). As a result, Defendants have established a non-retaliatory reason for the filing of the misbehavior report of June 17, 2015. *Flynn*, 2018 WL 3195095, at *12 (citing *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998) (concluding that plaintiff's admission of the underlying conduct established a "proper, non-retaliatory reason[] for filing the misbehavior report.")); *see also Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998) (where plaintiff admitted to committing the most serious, if not all, of the prohibited conduct charged in the misbehavior report, "defendants met their burden of demonstrating proper, non-retaliatory reasons for filing the misbehavior report.").

As a result, I recommend that Defendants' motion for summary judgment be granted with respect to the allegedly false misbehavior report of June 17, 2015, and be denied with respect to the "firing" of Plaintiff as a feed up porter.

**b.    Verbal Harassment**

Plaintiff alleges that sometime in June or July 2015, he was verbally harassed when Defendant Pflueger told another officer that he was going to "kick [Plaintiff's f****** a**." (Dkt. No. 1 at 19.)  In addition, Plaintiff alleges that on August 4, 2015, Defendant Pflueger said to another correction officer, "[t]his is also where we keep idiots like this guy who think they can snitch on officers and nothing's going to happen to them," and "[h]ow'd that work out for you stupid?  You want to help me explain to him how our grievance procedure works?"  (Dkt. No. 1 at 24-25.)[22]  Moreover, Plaintiff alleges that on August 6, 2015, Defendant Pflueger said, "[o]h, and just so you know, I didn't forget about your latest grievance either.  You better say a prayer to your White Supremacist God that I'm not here on the day they bring you down to the draft room, because I'll be watching the change sheet.  You're not gonna make it outta here in 1 piece."  (Dkt. No. 1 at 25.)

In this Circuit, allegations of verbal harassment or threats are generally an insufficient basis for an inmate's § 1983 claim.  *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed"); *Hayes v. Dahkle*, 16-CV-1368, 2017 WL 9511178, at *7

---

[22]    While this statement suggests retaliatory animus about Plaintiff's placement in administrative segregation, for the reasons set forth in Part III.C.1.c. *infra*, there is no evidence before the Court that Defendant Pflueger had any role in Plaintiff's administrative segregation placement (other than being the alleged target of Plaintiff's planned of attack).  In addition, Plaintiff accepted the recommendation that he be placed in administrative segregation.  (Dkt. No. 1 at 21-22.)

(N.D.N.Y. Oct. 30, 2017) (Hummel, M.J.) ("[v]erbal harassment absent injury, is generally

insufficient to rise to the level of a constitutional violation"); *Tafari v. Paul,* 06-CV-0603, 2009

WL 3260075, at *1 (W.D.N.Y. Oct. 8, 2009) (allegations of verbal harassment or abuse,

"without a showing of an actual injury, are insufficient to support a § 1983 claim") (citing *Lewis*

*v. Casey,* 518 U.S. 343, 349-50 (1996)); *Alexander v. Deming,* 03-CV-0147, 2009 WL 1044561,

at *5 (W.D.N.Y. Apr. 16, 2009) ("Courts within the Second Circuit have held that threats of

disciplinary action and verbal harassment without injury are insufficient to state a constitutional

violation") (citing cases); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996)

("Allegations of threats or verbal harassment, without any injury or damage, do not state a claim

under 42 U.S.C. § 1983.").  "Such statements are only sufficiently adverse for the purpose of a

First Amendment retaliation claim if they 'would deter a similarly situated individual of ordinary

firmness of exercising constitutional rights.'  Verbal threats may constitute [an] adverse action if

the threat is sufficiently specific.  'The less direct and specific a threat, the less likely it will deter

an inmate from exercising his First Amendment rights.'"  *Hayes*, 2017 WL 9511178, at *7

(citations omitted).  "The line between *de minimis* verbal harassment and retaliatory adverse

action . . . [hinges] on the specificity and seriousness of the words used."  *Quezada v. Roy*, 14-

CV-4056, 2015 WL 5970355, at *21 (S.D.N.Y. Oct. 13, 2015).

    "Mindful that inmates 'may be required to tolerate more than average citizens[] before a

retaliatory action taken against them is considered adverse'" *Davis*, 320 F.3d at 353, I conclude

that Defendant Pflueger's alleged statements constitute vague threats that lack the specificity and

seriousness "to deter an inmate from exercising his First Amendment rights" as no real threat

exists.  *Id.*; *see Hayes*, 2017 WL 9511178, at *8 (holding that where a correction officer

allegedly verbally harassed the plaintiff on two occasions "warning him to not get comfortable in

his housing unit because 'you mess with one of us (C.O.'s) you got to deal with all of us' and informing plaintiff that '[another correction officer] said hi!' . . . . constitute vague threats that lack the specificity and seriousness 'to deter an inmate from exercising his First Amendment rights' as no real threat exists.").

Furthermore, with respect to Defendant Pflueger's alleged threats of physical injury, Plaintiff "does not . . . allege that these threats were followed by any physical injury[,] and as a result, they are not actionable." *LaRocco v. N.Y.C. Dep't of Corr.*, 99-CV-9759, 2001 WL 1029044, at *5 (S.D.N.Y. Aug. 31, 2001). "Absent an appreciable injury following in close time to the threat of force [Defendant Pflueger's alleged] statement[], albeit inappropriate, lack the specificity and seriousness 'to deter an inmate from exercising his First Amendment rights.'" *Hayes*, 2017 WL 9511178, at *8 (quoting *Quezada v. Roy*, 14-CV-4056, 2015 WL 5970355, at *21 (S.D.N.Y. Oct. 13, 2015)).

As a result, to the extent the Complaint is construed as alleging that these incidents of verbal harassment were adverse actions—as opposed to evidence of a causal connection with respect to other adverse actions—I recommend dismissal of these claims.

### c.    Causing Defendant Gould to File a False Administrative Segregation Recommendation

Plaintiff has failed to adduce evidence in the record that Defendant Pflueger directed or caused Defendant Gould to file a false misbehavior report against Plaintiff. In fact, Defendant Gould affirmed that he "had no knowledge at the time [his] recommendation was made that Plaintiff had filed any grievances against Defendant [Pflueger]." (Dkt. No. 28, Attach. 6 at ¶ 11.) In addition, Plaintiff testified that (1) he did not know Defendant Gould before Defendant Gould made the recommendation that Plaintiff be placed in administrative segregation (Dkt. No. 28, Attach. 5 at 63), (2) he has no recollection of ever seeing Defendant Gould before the

recommendation (*id*.), and (3) he is not aware of any conversations that Defendant Gould had

with Defendant Pflueger, in which, they discussed that Defendant Gould should file an

administrative segregation recommendation based on false information (*id*. at 65).

The contention that Defendant Pflueger retaliated against Plaintiff by causing Defendant

Gould to file a false administrative segregation recommendation is merely a conclusory

allegation, which is insufficient to establish genuine issue of material fact for trial.  In addition,

this contention is sheer surmise on Plaintiff's part and unsupported by the record. (Dkt. No. 28,

Attach. 5 at 64 (Plaintiff testified that the basis for his belief that Defendant Gould filed the

recommendation on Defendant Pflueger's behalf is "[b]ecause there is no other reason to do

it.")); *Cole*, 2016 WL 5394752, at *27.

As a result, I recommend dismissal of Plaintiff's retaliation claim against Defendant

Pflueger with respect to this allegation.

### d.    Destruction of Plaintiff's Personal Property

Plaintiff failed to adduce any evidence that Defendant Pflueger destroyed (or confiscated

or threw away) Plaintiff's personal property.  The only evidence that Plaintiff presents in support

of his contention, is that another inmate (housed three cells away) witnessed Defendant Pflueger

in Plaintiff's cell.  (Dkt. No. 1 at 23.)  However, Plaintiff admitted that the other inmate "was

inside his cell, so he couldn't see [Defendant Pflueger] inside [Plaintiff's] cell."  (Dkt. No. 28,

Attach. 5 at 71.)  Moreover, it is undisputed that other individuals were involved in the removal

of Plaintiff's property from his cell and the transportation of that property to the special housing

unit.  (*Id.*; Dkt. No. 1 at 23.)  Plaintiff is speculating that because the other inmate saw Defendant

Pflueger in Plaintiff's cell, that Defendant Pflueger is responsible for Plaintiff's alleged missing

personal property.  However, this speculation is insufficient to create a material issue of fact for

trial because no reasonable juror could conclude that Defendant Pflueger took an adverse action against Plaintiff by destroying his property.

As a result, I recommend dismissal of Plaintiff's retaliation claim against Defendant Pflueger with respect to this allegation.

### 2.    Defendant Jones

Plaintiff failed to show a genuine issue of material fact that his protected conduct was a substantial or motivating factor in Defendant Jones's endorsement of Defendant Pflueger's misbehavior report dated June 17, 2015.  *Graham v. Henderson*, 89 F.3d 75, 81 (2d Cir. 1996). "[I]t is difficult to establish one defendant's retaliation for complaints against another defendant."  *Hare v. Hayden*, 09-CV-3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009)).

Here, Plaintiff did not file any grievances or complaints against Defendant Jones.  The record lacks any evidence establishing why Defendant Jones would endorse a false misbehavior report against Plaintiff, on Defendant Pflueger's behalf, beyond Plaintiff's conclusory allegations.  *See Hill v. Chalanor*, 128 F. App'x 187, 189 (2d Cir. 2005) (holding that the plaintiff's claim of a causal connection between defendant "Oliver's threats and the alleged actions of the other defendants in connection with Hill's medical care is wholly unsupported.") *Flynn v. Ward*, 15-CV-1028, 2018 WL 3195095, at *12 (N.D.N.Y. June 7, 2018) (Hummel, M.J.) (recommending dismissal of retaliation claims where "[t]he record lacks any evidence establishing why Alsante would file a false misbehavior report against Flynn, on Wellenstein's behalf, beyond Flynn's conclusory allegations.").  Without more, the evidence does not present a genuine issue of material fact for a jury to resolve.  *Flynn*, 2018 WL 3195095; *see Wright*, 554 F.3d at 274 (dismissing retaliation claim against a correction officer when the only alleged basis

for retaliation was a complaint about an incident involving another correction officer); *Alicea v. Maly*, 12-CV-0203, 2015 WL 4326114, at *14-15 (N.D.N.Y. July 14, 2015) (D'Agostino, J.) (dismissing retaliation claim which alleged that Correction Officer Trinidad retaliated against the plaintiff for protected actions he took with respect to Correction Officer Freeman, where the plaintiff alleged a close personal friendship between Trinidad and Freeman and the record was "devoid of any specifics, but replete with conclusions"); *Guillory v. Ellis*, 11-CV-0600, 2014 WL 4365274, at *18 (N.D.N.Y. Aug. 28, 2014) (D'Agostino, J.) ("[I]t is difficult to establish one defendant's retaliation for complaints against another defendant."); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (plaintiff failed to provide any basis to believe that a correction counselor would retaliate for a grievance that she was not personally named in); *Ciaprai v. Goord*, 02-CV-0915, 2005 WL 3531464, at *9 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.) (entering summary judgment on retaliation claim where the plaintiff cited only past grievances filed against correction officers other than the officer who disciplined the plaintiff).

As a result, I recommend that Plaintiff's retaliation claim against Defendant Jones be dismissed.

### 3.    Defendant Gould

For the reasons set forth above in Parts III.C.1.c. and III.C.2. of this Report-Recommendation, I find that the record lacks evidence establishing a causal connection between Defendant Gould's recommendation that Plaintiff be placed in administrative segregation and Plaintiff's grievances against Defendant Pflueger, beyond Plaintiff's conclusory allegations.  As a result, I recommend that Plaintiff's retaliation claim against Defendant Gould be dismissed.

###### 4.        Defendant Graham

The Second Circuit has previously indicated that supervisory defendants may be considered personally involved only if they "(1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring." *Rasheen v. Adner*, 356 F. Supp. 3d 222, 233 (N.D.N.Y. Jan. 28, 2019) (Hurd, D.J.) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).[23]

The Supreme Court's decision in *Iqbal* has raised the question of whether all of the *Colon* factors continue to be viable. *Keyes v. Annucci*, 19-CV-0372, 2019 WL 4602240, at *17 (N.D.N.Y. Sept. 23, 2019) (Suddaby, C.J.) (citing *Montanez v. City of Syracuse*, 16-CV-0550, 2019 WL 315058, at *17 (N.D.N.Y. Jan. 23, 2019) (Sannes, J.)). Neither the Second Circuit nor the Supreme Court have made any findings on this issue. *Keyes*, 2019 WL 4602240, at *17. "Courts within the Second Circuit have taken various approaches post-*Iqbal*, from finding that only the first and third factors remain viable, to continuing to apply all factors in the absence of Second Circuit guidance, to considering the specific constitutional provision underlying the claim and applying all the *Colon* factors to claims that rely on a standard of unreasonable conduct or deliberate indifference but declining to apply all of them where the claim requires instead a showing of discriminatory intent." *Id.* (s*ee Montanez*, 2019 WL 315058, at *17-18 (collecting cases) (adopting the specific constitutional provision approach and applying all the

---

[23]      "In addition to satisfying one of these requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).

*Colon* factors to the plaintiff's Fourteenth Amendment claims because they did not require a showing of discriminatory intent); *Carpenter v. Apple*, 15-CV-1269, 2017 WL 3887908, at \*9-10 (N.D.N.Y. Sept. 5, 2017) (Suddaby, C.J.) (noting that the majority of district courts have continued to apply all of the *Colon* factors "where the constitutional violation at issue does not require a showing of discriminatory intent" and adopting that majority approach); *Marom v. City of New York*, 15-CV-2017, 2016 WL 916424, at \*15 (S.D.N.Y. 2016) (reasoning that *Iqbal* supported the specific constitutional provision approach, and finding that all the *Colon* factors might be viable for false arrest and excessive force claims that were based on a reasonableness standard, but that the second, fourth, and fifth factors would not apply to a First Amendment retaliation claim because such claim contains an intent requirement)).

The Court agrees with the specific constitutional provision approach discussed above because it is the most consistent with the guidance provided in *Iqbal*. *See Iqbal*, 556 U.S. at 676 (noting that, "[t]he factors [related to whether a government official's individual actions violated the Constitution] necessary to establish a *Bivens* violation will vary with the constitutional provision at issue," discussing that the First and Fifth Amendments require that the official acted with a discriminatory purpose, and rejecting the argument that supervisors should be held liable on such claims merely because they knew of a subordinate's discriminatory purpose).  The Court will therefore consider only the first and third *Colon* factors because Plaintiff's claims are pursuant to the First Amendment.

"[A] retaliation claim under the First amendment requires a showing of discriminatory intent, [and as a result,] supervisory liability will be imposed only if Plaintiff[]" establishes "that the officials either (a) directly participated in the alleged constitutional violation, or (b) created,

or allowed to continue, a policy or custom under which the violation occurred." *Keyes*, 2019 WL 4602240, at *19.

"[W]hile personal involvement cannot be founded solely on supervision, liability can be found if the official proactively participated in reviewing the administrative appeals as opposed merely to rubber-stamping the results." *Molano v. Bezio*, 10-CV-6481, 2012 WL 1252630, at *5 (W.D.N.Y. Apr. 13, 2012) (citing *Collins v. Ferguson*, 804 F. Supp. 2d 134, 140 (W.D.N.Y. 2011); *Black v. Coughlin*, 76 F.3d 72, 74-75 (2d Cir. 1996)).

The record before the Court contains superintendent responses related to four grievances. (Dkt. No. 28, Attach. 11 at 1; Dkt. No. 28, Attach. 12 at 2; Dkt. No. 28, Attach. 14 at 1; Dkt. No. 28, Attach. 15 at 6; Dkt. No. 28, Attach. 18 at 1; Dkt. No. 28, Attach. 19 at 1.)  However, the signature of the superintendent who executed the response, in each instance, is illegible.  While Defendants argue that Defendant Graham merely rubber stamped the results of the investigation, "notably absent from the record is any affidavit or declaration from [Defendant Graham]" and absent "such evidence, a factual dispute exists as to whether [Defendant Graham] proactively participated in the decision-making process related to [Plaintiff's] grievances." *Flynn*, 2018 WL 3195095, at *13.

As such, I find that there is a triable issue of material fact for a jury to resolve with respect to Defendant Graham's personal involvement in Defendant Pflueger's alleged retaliatory conduct. *Flynn*, 2018 WL 3195095, at *13 (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). Therefore, I recommend that Defendants' motion with respect to Defendant Graham be denied.

### D.    Doctrine of Qualified Immunity

Finally, Defendants argue that, in any event, they are shielded from liability based on the doctrine of qualified immunity.

Qualified immunity shields federal and state officials from suit "'unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct.'" *Terebesi v. Torreso,* 764 F.3d 217, 230 (2d Cir. 2014) (quoting *Reichle v. Howards,* 566 U.S. 658, 664 (2012)). "A right is 'clearly established' if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Beckles v. City of New York,* 492 F. App'x 181, 182 (2d Cir. 2012) (quoting *Saucier v. Katz,* 533 U.S. 194, 202 (2001)).

Here, while Defendants summarize general caselaw, their argument in support of the qualified immunity defense is one paragraph long, entirely conclusory, and unsupported by any facts. Accordingly, it is recommended that Defendants' motion on this ground, be denied. *Thomas v. Delany*, 17-CV-1023, 2019 WL 4247807, at *19 (N.D.N.Y. Aug. 13, 2019) (Hummel, M.J.) (citing *Roberts v. Hobbs*, 10-CV-0174, 2010 WL 5888777, at *6 (E.D. Ark. Nov. 8, 2010) (summarily denying dispositive motion containing unsupported and conclusory qualified immunity arguments that fail to address the particular facts or cite any relevant cases)).

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 28) be **DENIED** with respect to Plaintiff's retaliation claims against (1) Defendant Pflueger for firing Plaintiff as a feed up porter, and (2) Defendant Graham as superintendent and **GRANTED** with respect to Plaintiff's retaliation claims against (1) Defendants Jones, (2) Defendant Gould, and (3) Defendant Pflueger for allegedly (a) filing a false misbehavior report against Plaintiff on June 17, 2015, (b) verbally harassing Plaintiff, (c) causing Defendant Gould to file an improper recommendation of administrative segregation, and (d) destroying Plaintiff's property.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[24]

Dated: November 26, 2019
        Binghamton, New York


_Miroslav Lovric_
Miroslav Lovric
U.S. Magistrate Judge

---

[24]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).